UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | Criminal No. H-10-787-04-SS |
| | § | |
| | § | |
| BERNARD LANGLEY | § | |

# PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Gregg Costa, Assistant United States Attorney; the defendant, Bernard Langley; and the defendant's counsel, Wendell Odom, have entered into the following plea agreement (the "Agreement") pursuant to Federal Rules of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B):

## The Defendant's Agreement

1.  The defendant agrees to plead guilty to Count One of the Second Superseding Indictment. Count One charges the defendant with knowingly conspiring to commit wire fraud by engaging in a scheme in which he paid millions of dollars in kickbacks to an employee of a Houston refinery, in violation of 18 U.S.C. § 1349. The kickbacks were made in return for favorable treatment for companies in which the defendant had a financial interest and which were involved in the shipment of oil from Venezuela to the Houston refinery. By entering this Agreement, the defendant

waives any right to have the facts that the law makes essential to the punishment for these offenses charged in the Second Superseding Indictment, proved to a jury, or proven beyond a reasonable doubt.

## Punishment Range

2. The statutory penalty for the violation of 18 U.S.C. § 1349 in Count One is up to twenty years imprisonment and a fine of up to $250,000. Additionally the defendant may receive a term of supervised release after imprisonment of not more than three years. Title 18 U.S.C. §§ 3559(a) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then defendant may be imprisoned for up to two years, without credit for time already served on the term of supervised release prior to such violation. Title 18 U.S.C. §§ 3559(a) and 3583(e)(3). Defendant understands that he is not eligible for parole.

## Mandatory Special Assessment

3. Pursuant to 18 U.S.C. § 3013(a)(2)(A), immediately after sentencing, the defendant will pay to the Clerk of the United States District Court a special assessment in the amount of $100.00 per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District

Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Cooperation

4. The parties understand that the Agreement carries the potential for a motion for departure pursuant to U.S.S.G. § 5K1.1. The defendant understands and agrees that whether such a motion is filed will be determined solely by the United States. Should the defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to U.S.S.G. § 5K1.1. The defendant agrees to persist in his guilty plea through sentencing and to cooperate fully with the United States. The defendant understands and agrees that the United States may request that sentencing be deferred until his cooperation is complete.

5. The defendant understands and agrees that the term "fully cooperate" as used in this Agreement includes providing all information relating to any criminal activity known to the defendant. The defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

    (a)    The defendant agrees that this Agreement binds only the United States Attorney for the Southern District of Texas and the defendant; it does not bind any other United States Attorney or any other component of the Department of Justice.

(b)     The defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. The defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this Agreement.

(c)     The defendant agrees to voluntarily attend any interviews and conferences the United States may request.

(d)     The defendant agrees to provide truthful, complete, and accurate information and testimony; and he understands that any false statements he makes to the Grand Jury, at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes.

(e)     The defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation.

(f)     Should the recommended departure, if any, not meet the defendant's expectations, the defendant understands that he remains bound by the terms of this Agreement and cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal

6.     The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined on any ground set forth in 18 U.S.C. § 3742. Additionally, the defendant is aware that 28 U.S.C. § 2255 affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to

contest his conviction or sentence by means of any post-conviction proceeding, including but not limited to proceedings authorized by 28 U.S.C. § 2255. If at any time the defendant instructs his attorney to file a notice of appeal on grounds other than those specified above, the United States will seek specific performance of this provision.

7.  In exchange for this Agreement with the United States, the defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed, in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates any provision of this Agreement, or (c) the defendant's plea is later withdrawn.

8.  In agreeing to these waivers, the defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the possible sentencing range under the *Sentencing Guidelines* that he may have received from his counsel, the United States, or the Probation Office is a prediction, not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. The defendant further understands and agrees that the *Sentencing Guidelines* are "effectively

advisory" to the Court. *United States v. Booker*, 543 U.S. 220 (2005). Accordingly, the defendant understands that, although the Court must consult the *Sentencing Guidelines* and must take them into account when sentencing him, the Court is bound neither to follow the *Sentencing Guidelines* nor to sentence the defendant within the guideline range calculated by use of the *Sentencing Guidelines*.

9. The defendant understands and agrees that each and all of his waivers contained in this Agreement are made in exchange for the corresponding concessions and undertakings to which this Agreement binds the United States.

## Immigration Consequences

10. If the defendant is not a citizen of the United States, a plea of guilty may result in deportation, exclusion from admission to the United State, or the denial of naturalization.

## The United States' Agreements

11. The United States agrees to each of the following:

(a) If the defendant pleads guilty to Count One of the Second Superseding Indictment and persists in that plea through sentencing, the United States will move to dismiss any remaining Counts of the Second Superseding Indictment at the time of sentencing and agrees not to file any additional charges related to the kickback scheme involving Houston Refining described in the Second Superseding Indictment.

(b) At the time of sentencing, the United States agrees not to oppose the defendant's anticipated request to the Court and the United States

Probation Office that he receive a two level downward adjustment pursuant to U.S.S.G. § 3E1.1(a) should the defendant accept responsibility as contemplated by the *Sentencing Guidelines*.

(c) If the defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a) and his offense level is 16 or greater, the United States agrees to move, pursuant to U.S.S.G. § 3E1.1(b), for an additional one level departure based on the timeliness of the Agreement or the expeditious manner in which the defendant provided complete information regarding his role in the offense.

(d) The United States agrees to take the position at sentencing that the following Sentencing Guidelines provisions apply and that no other offense characteristics or Chapter 3 adjustments apply:

| | |
|---|---:|
| Base Offense Level (2B1.1(a)): | 7 |
| Loss amount > $50 million but < $100 million (2B1.1(b)): | +24 |
| Sophisticated Means (2B1.1(b)(9)): | +2 |
| Total offense level before acceptance of responsibility: | 33 |

The United States agrees that the defendant may argues that the enhancement for loss should be less than 24 points without affecting his acceptance of responsibility.

(e) If the defendant complies with the plea agreement but the United States exercises its discretion not to file a motion under section 5K1.1 based on substantial assistance, then it agrees that a sentence at the low end of the advisory Guidelines range the Court deems applicable is reasonable.

### The United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under the *Sentencing Guidelines*. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with the defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and 18 U.S.C. § 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

13. The defendant is aware that the sentence will be imposed by the Court after consideration of the *Sentencing Guidelines*, which are only advisory, as well as the provisions of 18 U.S.C. § 3553(a). The defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which the defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable *Sentencing Guidelines*. The defendant understands and agrees that the parties' positions regarding the application of the *Sentencing Guidelines* do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up

to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, the defendant cannot, for that reason alone, withdraw a guilty plea, and he will remain bound to fulfill all of his obligations under this Agreement.

## Rights at Trial

14. The defendant represents to the Court that he is satisfied that his attorney has rendered effective assistance. The defendant understands that by entering into this Agreement, he surrenders certain rights as provided herein. The defendant understands that the rights of a defendant include the following:

   (a) If the defendant persisted in a plea of not guilty to the charges, the defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the Court all agree.

   (b) At a trial, the United States would be required to present witnesses and other evidence against the defendant. The defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for the defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

   (c) At a trial, the defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

15. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish the defendant's guilt:

   a. A subsidiary of LyondellBasell Industries, Houston Refining LP (Houston Refining), operates a major refinery in Houston. Most of the oil processed at that refinery is shipped from Venezuela. The cost of shipping that crude oil is a major expense. Pricing for crude freight has three components: (1) the amount of crude, typically fixed at 70,000 metric tons; (2) a fixed base rate published on a yearly basis by the World Scale Association that applies to a particular type of vessel and particular route; and (3) a multiplier that takes into account market fluctuations ("market multiplier"), which changes daily and is published by various reporting agencies such as the Association of Ship Brokers and Agents (ASBA). The total price to ship a particular crude freight cargo may be determined by using these three components. The market multiplier is the only component that fluctuates during the course of a year.

   b. In late 2006, defendant Jonathan Barnes became Marine Charter Manager for Houston Refining. As Marine Chartering Manager, Barnes was responsible for entering into contracts for the shipment of the oil being imported from Venezuela. During fall 2009, new management at Houston Refining noticed that the shipping costs Barnes was arranging seemed excessive. Subsequent analysis of shipping costs revealed that with respect to three entities Barnes was negotiating with which had not done business with Houston Refining prior to Barnes's tenure, the pricing was millions of dollars above published ASBA market rates.

   c. Federal investigation revealed that these three entities were paying Barnes millions of dollars in kickbacks. Defendant **Bernard Langley** operated Fossil Energy Resources, Ltd., which was incorporated in the British Virgin Islands, and a Camac entity incorporated in Belize. **Langley**'s business partner, codefendnat Clyde Meltzer, entered into the arrangement with Barnes in which Barnes would cause Houston Refining to do business with Meltzer and **Langley**'s shipping companies in exchange for Barnes receiving one-third of the profits. Barnes, Meltzer and **Langley**

did not disclose this arrangement to Houston Refining, which wired payments to Camac and Fossil under the false pretense that the rates were the result of arms-length negotiation when in fact Barnes had an incentive to pay higher rates because he was receiving one-third of any profit in the form of kickbacks. Using Swiss bank accounts, Meltzer and **Langley** paid Barnes approximately $20 million during the course of the scheme both by sending cash to Barnes and by paying for items Barnes purchased. Included among those kickbacks were the following two wire transfers that Meltzer and **Langley** caused to be sent from UBS in Switzerland to a Barnes account at Wachovia in Houston: a $2.8 million wire on June 24, 2009, and a $2 million wire on July 2, 2009.

## Breach of Plea Agreement

16.   If the defendant fails in any way to fulfill completely all of his obligations under this Agreement, the United States will be released from its obligations hereunder, and the defendant's plea and sentence will stand. If at any time the defendant retains, conceals, or disposes of assets in violation of this Agreement, or if the defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may ask the Court to set aside his guilty plea and reinstate prosecution. Any information and documents that have been disclosed by the defendant, whether prior to or subsequent to execution of this Agreement, and all leads derived therefrom, will be used against the defendant in any prosecution.

## Restitution, Forfeiture and Fines

17.  This plea agreement is being entered into by the United States on the basis of Defendant's express representation that Defendant will make a full and complete disclosure of all assets over which Defendant exercises direct or indirect control, or in which Defendant has any financial interest.

18.  Defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement (Form OBD-500 or similar form) by the deadline set by the United States, or if no deadline is set, no later than sentencing. Defendant agrees to authorize the release of all financial information requested by the United States, including but not limited to executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. Defendant agrees to discuss or answer any questions by the United States relating to the Defendant's complete financial disclosure.

19.  Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of the money judgment, restitution and fines, including but not limited to surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and basis for the forfeiture, and signing any other documents

necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of Defendant's assets, or custody of forfeitable assets in accounts upon which Defendant has signatory authority, to deliver all funds and records of such assets to the United States.

## Forfeiture and Money Judgment

20. The Defendant admits that he and his co-conspirators obtained approximately $60 million in proceeds from the wire fraud conspiracy. Defendant did not personally receive all of that money, which was shared among the co-conspirators. Defendant agrees to forfeit whatever interest Defendant has in assets obtained with or traceable to proceeds of the wire fraud conspiracy. In particular, Defendant stipulates and agrees that the property listed as Items 48-49, 51, 61, 65-68, 70-75 in the notice of forfeiture in the Second Superseding Indictment and subsequently filed forfeiture notices in which he has an interest are subject to forfeiture as they represent fraud proceeds or are traceable to fraud proceeds. Defendant agrees to the immediate forfeiture of the specific assets listed above regardless of the amount of the money judgment that may be imposed by the Court, and regardless of whether or not the value of the specific forfeited assets listed above exceeds the amount of the money judgment imposed.

21. The Defendant agrees to waive any and all interest in any asset which is the subject of any related administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal.

22. The Defendant agrees to a money judgment against him and in favor of the United States in an amount to be determined by the Court at or prior to sentencing. The Defendant and the United States do not agree on what the amount of the personal money judgment should be, and they agree to submit that issue to the district court at sentencing. The Defendant reserves only the right to contest in the district court the amount of the money judgment sought by the United States, and the Defendant understands that the Court will determine the amount of the personal money judgment. The Defendant understands that he is liable for the full amount of the money judgment imposed by the Court. The United States will request that the Court make the liability joint and several among any convicted codefendants.

23. The Defendant stipulates and admits that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists. Defendant agrees to forfeit any of Defendant's property, or Defendant's interest in any property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied. The United States shall credit against the money judgment the net proceeds recovered from the final forfeiture of any property of Defendant or of any property that appears

to be proceeds of the scheme of which the Defendant has been convicted. If a process known as restoration is employed, forfeited property can be used to reimburse the victims of a crime, and the amount realized from forfeiture reduces the amount a Defendant owes in restitution. Although this United States Attorney's Office does not have the authority to agree to restoration, this Office agrees to request that the Asset Forfeiture and Money Laundering Section of the Department of Justice transfer the property forfeited in this case to the Registry of the Court for distribution to the victim in accordance with the district court's anticipated order of restitution. The parties agree that any restitution payments made by the defendants held joint and severally liable will offset the amount of any outstanding money judgment.

24. Defendant consents to the order of forfeiture becoming final as to the Defendant immediately following this guilty plea pursuant to Fed.R.Crim.P. 32.2(b)(4)(A).

25. Defendant waives the right to challenge the forfeiture of property or the amount of the money judgment imposed by the district court in any manner, including by direct appeal or in a collateral proceeding.

### Restitution

26. Defendant agrees that the amount of restitution will be determined by the court at sentencing. Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge the restitution order imposed by the district court in any manner, including by direct appeal or in a collateral proceeding.

### Fines

27. Defendant understands that under the *United States Sentencing Commission Guidelines Manual* (hereafter referred to as "*Sentencing Guidelines*" or "U.S.S.G."), the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the United States for the costs of any imprisonment or term of supervised release, if any is ordered.

### Complete Agreement

28. This Agreement, consisting of seventeen pages constitutes the complete plea agreement between the United States, the defendant, and his counsel. No promises or representations have been made by the United States except as set forth in writing in this Agreement. The defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

29. Any modification of this Agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on October 20, 2011.

*[signature]*
Bernard Langley
Defendant

Subscribed and sworn to before me on October 20, 2011.

DAVID BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: *[signature]*
Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
United States Attorney

By: *[signature]*
Gregg Costa
Assistant United States Attorney

*[signature]*
Wendell Odom
Attorney for Defendant

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Criminal No. H-10-787-04-SS |
| BERNARD LANGLEY | § | |

## ADDENDUM TO PLEA AGREEMENT

I have fully explained to the defendant his rights with respect to the pending Second Superseding Indictment. I have reviewed the provisions of the *United States Sentencing Commission Guidelines Manual*, and I have fully and carefully explained to the defendant the provisions thereof which may apply in this case. I have also explained to the defendant that the *Sentencing Guidelines* are only advisory and the Court may sentence the defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of the Agreement with the defendant. To my knowledge, the defendant's decision to enter into the Agreement is an informed and voluntary one.

_____      10 · 20 · 11
Attorney                                                        Date

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the *United States Sentencing Commission Guidelines Manual* which may apply in my case. I have read and carefully reviewed every part of the Agreement with my attorney. I understand the Agreement, and I voluntarily agree to its terms.

_____      __10/20/11_____
Defendant                                                 Date